IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| | * | |
| BALTIMORE GAS & ELECTRIC | | |
| COMPANY, *et al.* | * | |
| | | |
| *Plaintiffs*, | * | |
| v. | | Civil No. RDB-24-1467 |
| | * | |
| RAND CONSTRUCTION | | |
| CORPORATION, | * | |
| | | |
| *Defendant*. | * | |

\*       \*       \*       \*       \*       \*       \*       \*       \*       \*       \*       \*       \*       \*

**MEMORANDUM OPINION**

On May 20, 2024, Plaintiffs Baltimore Gas and Electric Companies ("BGE"), Exelon Business Services Company, LLC ("EBS"), and Exelon Corporation ("Exelon"), (collectively, "Plaintiffs" or "Exelon Parties") initiated this action in a one-count Complaint requesting a declaratory judgment pursuant to 28 U.S.C. §§ 2201 *et seq.* that Defendant Rand Construction Corporation ("Defendant" or "Rand") is contractually obligated to indemnify and defend them in several underlying state lawsuits arising from a December 2020 explosion at a BGE building in Baltimore, Maryland.[1]  (ECF No. 1 at 1, 3.)  This Court has jurisdiction over the matter pursuant to 28 U.S.C. § 1332(a).

Among the motions currently pending before this Court is Plaintiffs' Motion for Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c) ("Plaintiffs' Motion") (ECF No. 20) and Plaintiffs' Motion for Attorney Fees (ECF No. 48).[2]  The parties'

---

[1] For clarity, this memorandum opinion cites to the ECF generated page number, rather than the page number at the bottom of the parties' various submissions, unless otherwise indicated.

[2] Also pending before this Court is Third-Party Defendant Aegis Mechanical Corporation's ("Aegis") Motion to Dismiss for Lack of Subject Matter Jurisdiction and Motion to Strike (ECF No. 34).  Rand impleaded Aegis,

filings have been reviewed and, on October 28, 2024, the Court heard the parties' arguments regarding Plaintiffs' Motion.[3]   For the reasons set forth on the record at the hearing and explained further below, Plaintiffs' Motion for Judgment on the Pleadings (ECF No. 20) and Plaintiffs' Motion for Attorney Fees (ECF No. 48) are GRANTED.   This Court awards attorneys' fees in the amount of $111,247.50 to Plaintiffs' counsel.

## BACKGROUND

In ruling on a Motion for judgment on the pleadings pursuant to Rule 12(c), this Court "accept[s] as true all well-pleaded allegations in the plaintiff's complaint" and draws all inferences to favor the nonmoving party.  *Belmora LLC v. Bayer Consumer Care AG*, 819 F.3d 697, 705 (4th Cir. 2016).  Except where indicated otherwise, the following facts are derived from Plaintiffs' Complaint (ECF No. 1) and accepted as true for the purpose of Plaintiffs' Motion (ECF No. 20).

Plaintiffs hired Rand as general contractor for several renovation projects at a BGE building located at 110 W Fayette Street, Baltimore, Maryland.  (ECF No. 1 ¶¶ 1, 2, 11, 13.)  On September 15, 2017, Rand and the Exelon Parties signed a "Master Terms and Conditions" ("Master T&C") governing the renovation work.   (*Id.* ¶ 2.)   Section 15.1, "Indemnification," and Section 15.2, "Limitation on Indemnification," of the Master T&C control the scope of indemnity and defense for losses arising from the renovation work.  (ECF No. 20-1 at 6-7.)  Section 15.1 provides:

> [Rand] will, to the fullest extent permitted by Law, indemnify, defend upon
> request, and hold harmless [the Exelon Parties] against all losses, claims,

---

its direct subcontractor for the renovation work that gave rise to the explosion at issue in the underlying state court actions, on July 17, 2024.  (ECF No. 22.)

[3] By the parties' agreement, the October 28, 2024, hearing did not address Aegis's pending Motion to Dismiss (ECF No. 34).

damages, expense (including reasonable attorneys' fees and other defense costs) and liabilities sustained or incurred by the [Exelon Parties] for any damage, harm, loss or injury of any kind, direct or indirect, to any property or Person (including death), including without limitation, claims for injuries or loss to employees of the [Exelon Parties], [Rand] and/or any Subcontractor, arising out of any act, omission, conduct, negligence or breach by Contractor Parties and/or arising out of or in any manner associated with the Work under [this Master T&C] or any contact or encounter with, or compromise or disruption of, any [Exelon Parties] Property, regardless of whether any such liability, damage, loss or injury is alleged to be caused by, result from or arise out of the negligence, fault or other liability of the [Exelon Parties] or any other party to be indemnified. [Rand] will further, to the fullest extent permitted by Law, indemnify, defend [the Exelon Parties] upon request, and hold [the Exelon Parties] harmless against any loss sustained or incurred by [the Exelon Parties] (including reasonable attorneys' fees and expenses) for any breach or nonperformance by [Rand] or its Subcontractors of any portion of these Terms and Conditions. [The Exelon Parties'] right to indemnification under this Section 15.1 will include, but not be limited to, legal fees and/or expenses associated with obtaining legal advice, prosecuting or defending any legal claim regarding insurance coverage, breach of these Terms and Conditions, contractual indemnity under these Terms and Conditions, or defense of any lawsuit filed by anyone for any claim relating either to the Work, or performance thereof, or these Terms and Conditions. [Rand's] Indemnification of the [Exelon Parties] will include any costs or expenses (including reasonable attorneys' fees and other costs) incurred by any [Exelon Parties] subpoenaed or otherwise required to participate in any proceeding pertaining to or involving a claim brought by any third party or Governmental Authority against or involving Contractor Parties.

(ECF No. 1-1 at 32.) Section 15.2 states:

Except as may be otherwise provided by applicable Law, [the Exelon Parties'] right to indemnification will not be impaired or diminished by any act, omission, misconduct, negligence or breach of [an Exelon Party] or any employee or agent of [an Exelon Party] who may be alleged to have contributed thereto and [Exelon Parties'] indemnification right will apply whether or not negligence or liability is alleged in whole or in part against [an Exelon Party] except to the extent it is finally adjudicated that any liability is caused by or resulting from the sole negligence of [an Exelon Party]. To the extent any Law may prohibit any application of all or any part of the indemnity obligations in these Terms and Conditions, it is the intent of the Parties that such provisions are severable, and will be construed to impose the indemnity obligation in all circumstances, applications, and situations to the fullest extent permitted by Law.

(*Id.*)  In Section 17.2 of the Master T&C, Rand waived any limitation or cap on the damages Plaintiffs may claim against it.  (ECF No. 1 ¶ 36.)  The parties signed a subsequent Purchase Order that amended the Master T&C to set the United States District Court for the District of Maryland, Baltimore Division, as venue—provided federal jurisdiction—for any litigation related to the Master T&C.  (ECF No. 32, Ex. B.)  Rand; Rand's direct subcontractor, Aegis; and Aegis' direct subcontractor, Poole & Kent Corporation ("P&K"), performed the renovation work under the Master T&C.  (*Id.* ¶¶ 12–15.)

On December 23, 2020, in connection with the renovations, an explosion occurred at the building.  (*Id.* ¶ 1.)  Various plaintiffs sued BGE, Exelon, Rand, Aegis, and P&K in seven personal injury lawsuits and two related subrogation actions presently pending in the Circuit Court for Baltimore City.  (*Id.*  ¶¶ 1, 28.)  The state plaintiffs allege that (1) failure to impose proper safety controls, properly tighten boiler flangers and control gas flow, and safely and reasonably upgrade gas systems caused the explosion; and (2) BGE and Exelon negligently failed to supervise and monitor the renovation work.  (*Id.* ¶¶ 28, 29.)  In the state litigation, the Exelon Parties have denied liability and cross claimed against Rand for common law indemnity and contribution.  (*Id.* ¶ 2; ECF No. 32 at 17.)  Their cross claims provide that "the Exelon Parties do not assert [any] contractual indemnity claim against Rand herein.  Rather, that claim is the subject of a separate federal court declaratory judgment action[.]"  (ECF No. 32-1 ¶ 47 n.1.)  According to Plaintiffs, Rand has denied liability and filed cross claims against its subcontractors in the state lawsuits.  (ECF No. 1 ¶ 31.)  After Rand failed to indemnify or defend them, Plaintiffs issued a Demand Letter to Rand on April 10, 2024, but, despite multiple extensions of time, Rand failed to respond.  (*Id.* ¶¶ 33, 42–46.)

Plaintiffs initiated the instant action in a one-count Complaint seeking a declaratory judgment pursuant to 28 U.S.C. §§ 2201 *et seq.* that, under the Master T&C, Rand is required to: (1) indemnify the Exelon Parties for all losses, claims, damages, expenses (including reasonable attorneys' fees and other defense costs), and current or future liabilities relating to the explosion and/or the underlying state lawsuits, including any losses resulting from Rand's refusal to indemnify and defend the Exelon Parties; and (2) defend the Exelon Parties in the underlying state lawsuits.  (*Id.* ¶ 49.)  On July 3, 2024, Rand filed its Answer (ECF No. 14), in which it admitted that it entered the Master T&C "with EBS as agent for [BGE]" and that the Master T&C's terms "speak for themselves."  (ECF No. 14 ¶¶ 2, 17, 34–37.)  On July 10, 2024, Plaintiffs filed a Motion for Judgment on the Pleadings ("Plaintiffs' Motion") (ECF No. 20), contending that Rand admitted facts such that declaratory judgment is required as a matter of law.  (ECF No. 20-1 at 13.)  On July 24, 2024, Rand filed an Opposition (ECF No 28), arguing that this Court should deny Plaintiffs' Motion or, alternatively, stay this action pending adjudication of the underlying facts in state court.  (ECF No. 28 at 12.)  The Exelon Parties filed a Reply on August 7, 2024.  (ECF No. 32.)  On October 28, 2024, this Court heard the parties' arguments regarding Plaintiffs' Motion, which it granted on the record, promising a memorandum opinion to follow.

## STANDARD OF REVIEW

"A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is subject to the same standard of review as a Rule 12(b)(6) motion to dismiss." *Bass v. Weintein Mgmt. Co.*, 56 F.4th 355, 360 (4th Cir. 2022) (*citing Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)); *see also Hartford Cas. Ins. Co. v. Ted A. Greve & Assocs., PA*, 742 F. App'x

738, 740, 742 (4th Cir. 2018). In reviewing a motion pursuant to Rule 12(c), a court must "accept as true all well-pleaded allegations in the plaintiff's complaint" and draw all reasonable factual inferences to favor the nonmoving party. *Belmora LLC v. Bayer Consumer Care AG*, 819 F.3d 697, 705 (4th Cir. 2016). A court may consider the pleadings—including written instruments attached to those filings—and authentic documents integral to the complaint. *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

A Rule 12(c) motion "tests only the sufficiency of the complaint and does not resolve the merits of the plaintiff's claims or any disputes of fact." *CentraArchy Rest. Mgmt. Co. v. Angelo*, 806 F. App'x 176, 177 (4th Cir. 2020). Therefore, "[a] Rule 12(c) motion is appropriate when all material allegations of fact are admitted in the pleadings and only questions of law remain." *Puchmelter v. SK Weston & Co., LLC*, 1:20-cv-309-ADC, 2020 WL 4903754, at *2 (D. Md. Aug. 20, 2020) (quoting *Wells Fargo Equip. Fin., Inc. v. State Farm Fire & Cas. Co.*, 805 F. Supp. 2d 213, 216 (E.D. Va. 2011) *aff'd* 494 F. App'x 394 (4th Cir. 2012)). As Judge Xinis of this Court has explained, a Rule 12(c) motion may be granted where "no genuine issues of material fact remain and the case can be decided as a matter of law." *Moore v. RealPage Utility Mgmt. Inc.*, 8:20-cv-927-PX, 2023 WL 2599571, at *1 (D. Md. Mar. 22, 2023).

## ANALYSIS

In their Motion, Plaintiffs seek judgment on the pleadings because there is no genuine dispute that the parties entered the Master T&C or that the terms of the Master T&C require Rand to indemnify and defend them in relation to the underlying state litigation. (ECF No. 20-1 at 11.) Plaintiffs contend that, under Section 15.1 of the Master T&C, Rand has a duty to indemnify and defend them subject to Section 15.2, which provides an exception to

indemnification where there is a final adjudication that liability stems from Plaintiffs' sole negligence. (*Id.* at 12.)  Accordingly, Plaintiffs seek a declaratory judgment that Rand is obligated to (1) indemnify the Plaintiffs for all losses, claims, damages, expenses (including reasonable attorneys' fees and other defense costs), and current or future liabilities relating to the explosion and/or the state court actions, including in this action, and (2) defend Plaintiffs in the state court actions regardless of any final adjudication.  In opposition, Rand argues that (1) this Court lacks jurisdiction because the action is neither ripe nor justiciable, or, alternatively, (2) this Court should decline to exercise its jurisdiction because of the ongoing state litigation.  (ECF No. 28 at 4-12.)  The Court addresses each argument in turn.

## I.    Jurisdiction

To adequately state a claim for declaratory judgment, a plaintiff must show (1) there is an immediate, "actual controversy" between the parties; (2) the court has subject matter jurisdiction independent of the request for declaratory relief; and (3) the court does not abuse its discretion by exercising jurisdiction.  *WHC MD, LLC v. Transdev N. Am., Inc.*, ADC-24-1618, 2024 WL 4189723, at *4 (D. Md. Sept. 13, 2024) (citing *Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co.*, 386 F.3d 581, 592 (4th Cir. 2004)).  Ripeness is a jurisdictional issue, and an action is ripe if (1) the issues are purely legal, and (2) the controversy is final, or not dependent on future uncertainties.  *L-3 Comms. Corp. v. Serco, Inc.*, 673 F. App'x 284, 290 (4th Cir. 2016) (citing *Doe v. Va. Dep't of State Police*, 713 F.3d 745, 758 (4th Cir. 2013)).  The United States Court of Appeals for the Fourth Circuit has recognized that trial courts have broad discretion to issue declaratory judgments and must "have 'good reason' to 'decline to

entertain a declaratory judgment action.'" *McNulty v. Casero*, 479 F. Supp. 3d 200, 209 (D. Md. 2020) (quoting *Cont'l Cas. Co. v. Fuscardo*, 35 F.3d 963, 965 (4th Cir. 1994)).

Here, this action is ripe and declaratory relief is appropriate.[4]  The meaning of Sections 15.1 and 15.2 of the Master T&C—which all parties agree they entered—does not depend on the outcome of future events.  Under Maryland law, the interpretation of a contract is a purely legal issue.  *See Bainbridge St. Elmo Bethesda Apts., LLC v. White Flint Express Realty Grp.*, 454 Md. 475, 484 (2017).  Additionally, Plaintiffs and Rand, all of which are defendants in the state litigation, disagree about the scope and application of Sections 15.1 and 15.2 of the Master T&C.  Rand argues Section 15.2 imposes a condition precedent to indemnification, while Plaintiffs contend that it is merely an exception to indemnification. Therefore, there is an actual and immediate controversy between the parties because Plaintiffs must defend themselves in the underlying state actions until this contractual dispute is resolved.  A declaratory judgment will clarify Rand's contractual duties to the Exelon Parties and prevent further uncertainty about the scope of those duties.  Rand's assertion that Plaintiffs' claim is unripe because of the remote future possibility that Plaintiffs may be found solely liable in negligence is unconvincing.  This argument would render contractual indemnification and defense provisions useless in disputes such as this, where one party declines to acknowledge its contractual obligations during ongoing complex litigation.

Moreover, federalism, efficiency, and comity favor declaratory relief.  As an initial matter, the underlying state lawsuits are not parallel proceedings because they raise common law claims distinct from the contractual claim at issue here and involve many parties not

---

[4] The parties do not dispute that this Court has diversity jurisdiction over this action.

named here.  Even if the state lawsuits were parallel proceedings, however, declaratory judgment would still be appropriate under the four-factor balancing test elucidated in *Penn-Am Ins. Co. v. Coffey*, 368 F.3d 409, 412 (4th Cir. 2004).  First, Maryland has little interest in deciding the scope of a private contract.  *See United Capitol Ins. Co. v. Kapiloff*, 155 F.3d 488, 494 (4th Cir. 1998) (holding Maryland courts had no significant interest in deciding standard contract interpretation); *Med. Mut. Ins. Co. of N. Carolina v. Littaua*, 35 F.4th 205, 209 (4th Cir. 2022) (noting states have strong interest where law is difficult, complex, or unsettled).  Second, Maryland courts are unlikely to more efficiently resolve this contract dispute because the underlying state lawsuits involve numerous overlapping claims and various additional parties.  Third, there are no overlapping issues of fact or law between this action and the underlying state litigation.  The common law indemnity and contribution claims the Exelon Parties have asserted against Rand in state court are legally distinct from the contractual indemnity and defense dispute they raise here, and there is no factual dispute that the parties entered the Master T&C or that its terms govern these disputes.  Finally, Plaintiffs are not forum shopping because the Master T&C establishes federal court as the venue so long as federal jurisdiction exist.  *See* ECF No. 1-1 § 29.3.  Therefore, it is appropriate for the Court to exercise its jurisdiction here.

## II.    Judgment on the Pleadings is Appropriate

Judgment on the pleadings is appropriate where, assuming all facts in the Complaint are true and drawing all reasonable factual inferences to favor the nonmoving party, the matter can be decided as a matter of law and will not delay trial.  *Transdev N. Am., Inc.*, 2024 WL 4189723, at *2.  Here, the pleadings are closed because Rand filed its Answer (ECF No.

14), and all parties admit that Sections 15.1 and 15.2 of the Master T&C govern this dispute and the underlying state litigation. Therefore, only the legal issue of interpreting the language in the Master T&C remains.

A federal court sitting in diversity applies the law of the state in which it sits such that this Court applies Maryland law to the interpretation of the contract at issue here. *CLM Equip. Co.*, 386 F.3d at 589-600; *Bainbridge*, 454 Md. at 485. Maryland courts construe the language of an indemnification provision in accordance with its ordinary, accepted meaning. *Bd. Of Trustees, Cmty. Coll. Of Balt. Cnty. v. Patient First Corp.*, 444 Md. 452, 466 (2015). Although Maryland has a common-law presumption against indemnification for one's own negligence, a contract's unequivocal terms evincing intent to indemnify a party against its own negligence can overcome that presumption. *Id.* A contract's terms likewise govern the scope of the contractual duty to defend, which is broader than the duty to indemnify. *Back Creek Partners, LLC v. First Am. Title Ins. Co.*, 213 Md. App. 703, 712 (2013); *Litz v. State Farm Fire & Cas. Co.*, 346 Md. 217, 225 (1997); *Cowan Sys. v. Harleysville Mut. Ins. Co.*, 457 F.3d 368 (4th Cir. 2006). The duty to defend attaches as long as the claim against the indemnitee—"no matter how attenuated, frivolous, or illogical"—is potentially covered by the applicable contract. *Aetna Ins. Co. v. Aaron*, 112 Md. App. 472, 481 (1996) (citing *Sheets v. Brethren Mut. Ins. Co.*, 342 Md. 634 (1996)).

Here, all parties agree that the state litigation arises from or is associated with the renovation work contemplated in the Master T&C. Specifically, the underlying state litigation involves negligence, products liability, strict liability, and statutory claims based on personal injuries allegedly suffered in the explosion at the site of the renovation work. Section 15.1

imposes on Rand a duty to indemnify and defend Plaintiffs for all liabilities, legal expenses, and defense costs related to *any action* arising out of that renovation work. Therefore, by the plain language of Section 15.1, Rand is obligated to indemnify and defend Plaintiffs in the underlying state lawsuits. Additionally, because Plaintiffs only filed the instant action for declaratory relief after Rand failed to respond to their demands for indemnification and defense, Rand's indemnification and defense obligations extend to this action.

Section 15.2 does not create a condition precedent to Rand's contractual indemnification duty in Section 15.1. A condition precedent is "a fact, other than lapse of time, which unless excused" must occur before a contractual duty of immediate performance attaches. *Gebhardt & Smith LLP v. Md. Port Admin.*, 188 Md. App. 532, 567 (2009) (internal quotation and citation omitted). In Maryland, "[t]he question of whether a stipulation in a contract constitutes a condition precedent is one of construction dependent on the intent of the parties to be gathered from the words they have employed[.]" *Chirichella v. Erwin*, 270 Md. 178, 182 (1973). No specific language is required to create a condition precedent, but words such as "if," "provided that," "subject to," "after," "as soon as," and "when" tend to indicate an intent to create a condition precedent. *Id.*

Here, Section 15.2 by its plain language states that Plaintiffs' "right to indemnification" shall not be impaired "*except to the extent* that it is finally adjudicated that any liability is caused by or resulting from [Plaintiffs'] sole negligence." (ECF No. 1-1 at 32 (emphasis added).) This language does not suggest that Rand's indemnification duty only attaches after a final adjudication has issued. Rather, by its plain language, Section 15.2 creates an exception to Rand's duty to indemnify where there is a final adjudication that liability arose from Plaintiffs'

sole negligence.  Plaintiffs and Rand acknowledge that such a final adjudication is an extremely remote possibility.  Rand admits that it has claimed in the underlying state lawsuits that its subcontractors' negligence caused the explosion, injuries, and damages at issue.

Accordingly, Plaintiffs' Motion for Judgment on the Pleadings (ECF No. 20) and Plaintiff's request for declaratory judgment are GRANTED.  In accordance with the language of the parties' Master T&C, Rand is obligated to (1) indemnify Plaintiffs for all losses, claims, damages, expenses (including reasonable attorneys' fees and other defense costs), and current or future liabilities relating to the explosion and/or the State Court Actions, including in this action, and (2) defend Plaintiffs in the State Court Actions regardless of any final adjudication.

## III.    Attorneys' Fees

In their Motion for Attorney Fees (ECF No. 48), the Exelon Parties request $111,247.50 incurred in connection with this declaratory judgment action between April 10, 2024, and October 28, 2024.[5]  (ECF No. 48 ¶ 6.)  In accordance with Appendix B of this Court's Local Rules, Plaintiffs provided the following breakdown:[6]

| Attorney | Rates | Years of Experience | Hours Worked by Month |
|----------|-------|---------------------|-----------------------|
| Jon Singer | $635 | 14 | **Apr.:** 49.2; **May:** 42.4; **June:** 30.1; **July:** 28.2; **Aug.:** 28.1; **Sept.:** 30; **Oct.:** 48.8 |
| Kayleigh Keilty | $515 | 11 | **Apr.:** 35.7; **May:** 21.5; **June:** 2.9; **July:** 12; **Aug.:** 3.4; **Sept.:** 12; **Oct.:** 10.6 |
| Ashley Fellona | 515 | 6 | **Apr.:** 21; **May:** 8.2; **June:** 5.5; **July:** 0.4; **Aug.:** 3.4; **Sept.:** 9.9; **Oct.:** 29.5 |
| Rebekah Nickerson | 380 | 4 | **Apr.:** 5.5; **May:** 10.3; **June:** 29.5; **July:** 35.4; **Aug.:** 2.4; **Sept.:** 7.4; **Oct.:** 32.4 |

---

[5]  This limited period for fees comports with the Court's instructions to the parties on the record at the October 28, 2024, hearing.  In their Motion, the Exelon Parties "expressly reserve their right to otherwise demand and recover from Rand" additional losses, including attorneys' fees, "incurred … in connection with the investigation of the December 23, 2020 explosion and/or defense in the State Court Actions[.]"  (ECF No. 48 ¶5 n.1.)

[6]  Although these rates exceed the hourly rates set forth in the Local Rules Appendix B, Plaintiffs attached a declaration from their counsel that these rates reflect actual market rates.  (ECF No. 48-2 ¶¶ 16-19; ECF No. 48-3 ¶¶5-8.)

| | | Total Fees | $111,247.50 |
|---|---|---|---|
| | | | (Based on 217.6 total hours) |

These fees encompass the work Plaintiffs' counsel performed in relation to Plaintiffs' Motion for Judgment on the Pleadings (ECF No. 20), a discovery dispute between the parties, and Plaintiffs' briefing as to Third-Party Defendant Aegis's Motion to Dismiss (ECF No. 34).[7]

In opposition, Rand contends that this fee award should be reduced. First, Rand argues that Plaintiffs should not receive fees for unnecessary discovery, including Plaintiffs' opposition to Rand's request to stay discovery, and unnecessary filings, such as Plaintiffs' responsive briefing to Aegis's Motion to Dismiss (ECF No. 34). By Rand's calculation, the fee award should be reduced by a total of $28,231.00—$13,441.50 for the unnecessary discovery dispute and $14,789.50 for the unnecessary briefing—for these unnecessary filings. Second, Rand argues that the award should be reduced because Plaintiffs' counsels' hourly rates exceed those included in this Court's Local Rules by as much as forty-five percent, and Plaintiffs did not meet their burden to show that such rates are reasonable.

This Court has explained the calculation of a reasonable fee award, known as the lodestar award, as follows:

> A court's award of reasonable attorneys' fees is the product of the reasonable hours expended multiplied by a reasonable hourly rate. In assessing the reasonableness of the hours and rate claimed, the court considers the following twelve factors elucidated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (1974) and adopted by the [U.S. Court of Appeals for the] Fourth Circuit in *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 n. 28 (4th Cir.1978): "(1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount

---

[7] The hours reported also appear to reflect work that Plaintiffs' counsel performed in relation to the underlying state litigation. As Plaintiffs explain in their Motion, those hours do not form part of the fee calculation.

in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Xiao–Yue Gu v. Hughes STX Corp.*, 127 F.Supp.2d 751, 764 (D. Md. 2001) (quoting *EEOC v. Serv. News Co.*, 898 F.2d 958, 965 (4th Cir. 1990) and citing *Hensley v. Eckerhart*, 461 U.S. 424 (1983)).

The twelve-factor test is subsumed in the initial calculation of the lodestar award. *Hensley*, 461 U.S. at 434 n.9. A fee applicant "must show that the number of hours for which he seeks reimbursement is reasonable and does not include hours that are excessive, redundant, or otherwise unnecessary." *Monge v. Portofino Ristorante*, Civ. No. WDQ-09-3144, 751 F. Supp. 2d 789, 800 (D. Md. 2010) (quoting *Travis v. Prime Lending*, 2008 WL 2397330, at *4 (W.D. Va. June 12, 2008)). "'When ... the applicant for a fee has carried his burden of showing that the claimed rate and number of hours are reasonable, the resulting product is presumed to be the reasonable fee to which counsel is entitled." *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986) (internal quotations omitted). Generally, a trial court "may exercise its discretion in determining the lodestar amount because it possesses superior understanding of the litigation, and the matter is essentially factual." *Lopez v. XTEL Constr. Grp.*, No. PWG–08–1579, 838 F. Supp. 2d 346, 349 (D. Md. 2012) (internal quotations and citation omitted); *see also Plyler v. Evatt*, 902 F.2d 273, 277–78 (4th Cir. 1990). This Court is further guided by Appendix B of its own Local Rules, titled "Rules and Guidelines for Determining Attorneys' Fees in Certain Cases." Appendix B contains specific mandatory rules regarding billing format, time recordation, and the

14

submission of quarterly statements to opposing counsel, as well as guidelines regarding compensable and non-compensable time and hourly rates.

Here, Plaintiffs have met their burden to show that the hourly rate for each attorney is reasonable.  The hourly rates suggested in Appendix B of this Court's Local Rules are not binding, and a fee applicant may prove fees are reasonable by his own affidavit and "satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which he seeks an award." *Plyler*, 902 F.2d at 277.  Here, Plaintiffs' counsel Jonathan Singer attached his own affidavit that the fees reflect market rate, the affidavit of the Chief Financial Officer of Saul Ewing LLP stating the same, and Thomson Reuters Financial Insights Data detailing billable rates for Am Law 101-200 law firms in Baltimore, Maryland, and Washington, D.C.   (ECF No. 48-1; ECF No. 48-2; ECF No. 48-3.)  These filings reveal that the hourly rates for the four attorneys who worked on this action are consistent with—in fact, slightly below—both the mean and median hourly rate of litigation attorneys in the Baltimore and Washington, D.C. area.   Accordingly, Plaintiffs' counsel has met their burden to show that the hourly rates are reasonable.

Plaintiffs counsel have similarly proven that the number of hours devoted to this action was reasonable.  Plaintiffs submitted an itemization of legal fees and costs, which shows that Plaintiffs counsel spent 62 hours on case development, background investigation and case administration; 26.5 hours on pleadings; 10.8 hours on discovery; 111.5 hours on motions practice; and 6.8 hours on court hearings.  (ECF No. 48-1 at 6.)  Given the time-constraints in this case—Plaintiffs filed the action because they were paying defense costs in the ongoing underlying state court actions—and Rand's motions to stay discovery and

implead a third-party defendant, these hours are reasonable.  This Court is unconvinced by Rand's argument that it should deduct Plaintiffs' requested fees related to the discovery dispute and Aegis's Motion to Dismiss (ECF No. 34).  Plaintiff only responded to those motions because other parties filed them, and their decision to respond to motions potentially affecting their Motion for Judgment on the Pleadings (ECF No. 20) was reasonable. Considering the competent evidence provided by Plaintiffs in conjunction with the Court's Local Guidelines and the twelve *Johnson* factors, this Court determines that Plaintiffs' requested fees are reasonable.  Accordingly, attorneys' fees in the amount of $111,247.50 are included in the judgment.

## CONCLUSION

For the reasons explained above, Plaintiffs' Motion for Judgment on the Pleadings (ECF No. 20) is GRANTED.  Specifically, Plaintiffs are entitled to a declaratory judgment requiring Rand Construction Corporation to (1) indemnify Plaintiffs for all losses, claims, damages, expenses (including reasonable attorneys' fees and other defense costs), and current or future liabilities relating to the explosion and/or the underlying state lawsuits, including any losses resulting from Rand's refusal to indemnify and defend Plaintiffs; and (2) defend Plaintiffs in the underlying state lawsuits.  Additionally, Plaintiffs' Motion for Attorney Fees (ECF No. 48) is GRANTED, and Defendant Rand Construction Corporation is ordered to pay Plaintiffs attorneys' fees in the amount of $111,247.50.

Dated: November 8th, 2024

/s/_____
Richard D. Bennett
United States Senior District Judge

16