## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| | * | |
| RAND CONSTRUCTION CORPORATION, | * | |
| *Third-Party Plaintiff*, | * | |
| v. | * | Civil No. RDB-24-1467 |
| AEGIS MECHANICAL CORPORATION, | * | |
| | * | |
| *Third-Party Defendant*. | | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

This third-party action arises from disputes related to renovation work at a building located at 2 Center Plaza, 110 West Fayette Street in Baltimore City, Maryland ("Building"). (ECF No. 22 ¶ 1.)  The Building was owned by the Baltimore Gas and Electric Company ("BG&E"), Exelon Business Services Company, and Exelon Corporation (collectively, "Original Plaintiffs"), which hired Rand Corporation ("Rand" or "Third-Party Plaintiff") as general contractor for the renovation project.  (ECF No. 1 ¶ 13.)  During the period of renovation, an explosion occurred at the Building, causing personal injuries to various individuals who sued Original Plaintiffs, Rand, and Rand's subcontractors in at least seven lawsuits currently pending in the Circuit Court for Baltimore City.  (*Id.* ¶¶ 1, 6.)

On May 20, 2024, Original Plaintiffs filed an action for declaratory relief in this Court in which they generally sought a declaratory judgment that Rand was obligated to defend and indemnify them in relation to the underlying state court actions. (ECF No. 1.)  Pursuant to Federal Rule of Civil Procedure 14 and 28 U.S.C. § 1367, Rand impleaded Third-Party

Defendant Aegis Mechanical Corporation ("Third-Party Defendant" or "Aegis"), which Rand hired as a subcontractor for the renovation work at the Building.  In its Third-Party Complaint for Declaratory Relief ("Third-Party Complaint") (ECF No. 22), Rand seeks a declaratory judgment that Aegis is obligated to defend and indemnify it under the parties' various subcontract agreements.[1]  (*Id.* ¶¶ 5, 39–44.)  On September 30, 2024, following a hearing, this Court granted Original Plaintiffs' Motion for Judgment on the Pleadings and issued a declaratory judgment in their favor.[2]  (ECF Nos. 55, 56.)

Currently pending before this Court is Aegis' Motion to Dismiss for Lack of Jurisdiction and Motion to Strike Rand's Third-Party Complaint ("Aegis' Motion") (ECF No. 34).  Rand has responded in Opposition (ECF No. 36), and Aegis has replied (ECF No. 39).  The parties' submissions have been reviewed and no hearing is necessary. Loc. R. 105.6 (D. Md. 2023).  Although Rand argues that this Court's rulings as to jurisdiction over its Third-Party Complaint must mirror its rulings regarding jurisdiction over Original Plaintiffs' Complaint, the Third-Party Complaint raises indemnification and defense obligations under a different contract with distinct language and terms.  The contract between Original Plaintiffs and Rand required indemnification "except to the extent that it is finally adjudicated that any liability is caused by or resulting from the sole negligence of [the Exelon Parties]."  (ECF No.

---

[1]  As further explained below, the scope of the declaratory judgment that Rand seeks is somewhat unclear, but the Court construes Rand's Third-Party Complaint to request a declaratory judgment addressing both the alleged duty to defend and the alleged duty to indemnify.

[2]  The hearing and prior ruling addressed solely the dispute between Original Plaintiffs and Rand.  The facts related to the original Complaint (ECF No. 1) are provided in this Court's previous Memorandum Opinion and Order in which the Court issued a declaratory judgment that, under the contract between Original Plaintiffs and Rand, Rand must indemnify Original Plaintiffs as described in the Court's Order (ECF No. 56).  *See also* (ECF No. 55).  After the Court granted Original Plaintiffs' Motion for Judgment on the Pleadings, the case was recaptioned to reflect that Rand and Aegis, as Third-Party Plaintiff and Third-Party Defendant, respectively, are the remaining parties in this case.

1 Ex. 1 at 32; ECF No. 1 ¶ 35(a).)  The contract between Rand and Aegis, however, requires indemnification "only . . . to the extent that" damages resulted from Aegis' "negligence, fault, or responsibility." (ECF No. 1 Ex. 3 § 16.1); *see also* (ECF No. 22 ¶ 28.)  Because Rand's third-party claim arises from distinct contractual language in a contract separate and apart from its contract with Original Plaintiffs, the third-party claim requires an independent jurisdictional analysis.  The Court concludes that Rand's third-party claim as to indemnification is unripe, and the exercise of jurisdiction as to Aegis' defense obligations would inappropriately interfere with the underlying state court actions.  As explained further below, Aegis' Motion (ECF No. 34) is GRANTED on its jurisdictional basis.  Consequently, Rand's Third-Party Complaint is DISMISSED WITHOUT PREJUDICE.[3]

## BACKGROUND

This action arises from contractual obligations related to various contracts governing a renovation project at a Building in Baltimore, Maryland.  (ECF No. 22 ¶ 1.)  The renovation project included the installation of a new natural gas heating system, improvements to various floors of the Building, and installation of three gas boilers and associated venting and piping ("Boiler Project").  (ECF No. 1 ¶ 11.)  Rand was hired as general contractor for the Boiler Project and renovation work on various floors of the Building pursuant to a Master Terms and Conditions Contract ("Master T&C") between Original Plaintiffs and Rand.  (*Id.* ¶ 13;

---

[3] Dismissal is without prejudice because "a court that lacks jurisdiction has no power to adjudicate and dispose of a claim on the merits." *S. Walk at Broadlands Homeowner's Ass'n v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 185 (4th Cir. 2013).  Even where a court's jurisdiction is discretionary and a court declines to exercise such jurisdiction, dismissal is still without prejudice. *See, e.g.*, *Paul v. Plank*, RDB-18-2239, 2023 WL 6290923, at *7 (D. Md. Sept. 27, 2023) (declining to exercise discretionary supplemental jurisdiction and dismissing without prejudice); *Zurich Am. Ins. Co. v. Covil Corp.*, 2020 WL 4483236, at * 12 (M.D.N.C. Aug. 4, 2020) (declining to exercise discretionary jurisdiction under Declaratory Judgment Act and dismissing without prejudice).

ECF No. 22 ¶¶ 15–16.)  Rand separately hired Aegis as its subcontractor, and Aegis and Rand entered a Master Subcontract Agreement ("MSA") and subsequent subcontracts incorporating the MSA, which governed the scope of Aegis' work at the Building.  (ECF No. 22 ¶¶ 4, 17; ECF No. 1 Ex. 3.)[4]  Aegis then hired P&K as its subcontractor to perform work associated with the Boiler Project.  (ECF No. 1 ¶ 15; ECF No. 22 ¶ 19.)

On or about December 23, 2020, an explosion occurred at the Building, allegedly causing personal injury to several individuals who subsequently filed tort claims against BG&E, Exelon Corporation, and Exelon Business Services Company (collectively, "Original Plaintiffs"), Rand, Aegis, and P&K in seven underlying state actions in the Circuit Court for Baltimore City.  (ECF No. 1 ¶ 27; ECF No. 22 ¶¶ 20–23.)  An insurance company also filed a subrogation action related to the explosion and the alleged personal injury and damages.  (ECF No. 1 ¶ 27 n.3.)  On May 20, 2024, Original Plaintiffs filed a Complaint for declaratory relief in this Court, seeking a declaratory judgment that Rand was contractually obligated to indemnify and defend them in the underlying state actions.  *See* (ECF No. 55 (describing facts of Complaint).)  On July 17, 2024, Rand impleaded Aegis as Third-Party Defendant pursuant to Federal Rule of Civil Procedure 14 by filing a Third-Party Complaint for Declaratory Relief (ECF No. 22).  The Third-Party Complaint asserts that Aegis is incorporated and has its principal place of business in Maryland, and Rand is incorporated and has its principal place of business in Virginia.  (*Id.* ¶¶ 11, 12.)  Rand asserts that this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over its third-party claim against Aegis.  (*Id.* ¶ 13.)

---

[4] Rand's Third-Party Complaint (ECF No. 22) incorporates by reference all exhibits to the Original Plaintiffs' Complaint (ECF No. 1), including the MSA.  (ECF No. 22 ¶ 8.)

This Court granted Original Plaintiffs' Motion for Judgment on the Pleadings and issued a declaratory judgment in their favor by Memorandum Opinion and Order dated November 8, 2024.  *See* (ECF Nos. 55, 56.)

In its Third-Party Complaint, Rand alleges that under "the Aegis MSA and Subsequent Aegis Subcontracts, Aegis is responsible for indemnifying and defending Rand and the Owner (*i.e.*, "Exelon as agent for BG&E") against the claims in the State Court Actions, as well as the claims in this case asserted by [Original Plaintiffs] seeking indemnity and a defense from Rand in the State Court Actions."  (*Id.* ¶ 7.)  Rand alleges that under the MSA and subsequent subcontracts, Aegis agreed to "perform all work and furnish all labor materials, equipment, scaffolding, hoisting, transportation, tools, supervision, supplies, applicable taxes, freight insurance for the proper construction and completion of the work described in the [MSA]." (*Id.* ¶ 18, ECF No. 22 Ex. A.)  Rand alleges that, in Section 6.1 of the MSA, Aegis agreed that,

> Subcontractor[5] shall be liable to Contractor[6] for all costs, damages and losses Contractor incurs as a result of Subcontractor's failure to fulfill its obligations under this Subcontract Agreement and the Contract Documents. Subcontractor's failure to fulfill its obligations shall include the failure of its suppliers, vendors, consultants or subcontractors of any tier to perform.

(ECF No. 1. Ex. 3, § 6.1.)  Rand alleges that Aegis agreed under the MSA that its work would be "good quality, free from faults and defects and in strict conformance with the Contract Documents."  (*Id.* § 10.1.)

Furthermore, Rand alleges that Aegis agreed to indemnify and defend Rand in Section 16.1 of the MSA, which provided

---

[5]  Subcontractor refers to Aegis.
[6]  Contractor refers to Rand.

To the fullest extent permitted by law, Subcontractor shall protect, defend, indemnify and hold harmless Contractor, Owner, and if required by Contractor's contract with Owner, Owner's architect ("Indemnified Parties"), and all of the Indemnified Parties' affiliates, parents, subsidiaries, officers, directors, agents and employees, from and against all claims, damages, fines, losses and expenses, including but not limited to attorney's fees (hereinafter collectively referred to as "Claims and Damages"), arising out of or resulting from Subcontractor's Work, provided that (1) any such Claims or Damages are attributable to, arise out of, or result from: (a) bodily injury, sickness, disease or death; (b) injury to or destruction of tangible property (other than Subcontractor's Work itself), including the loss of use therefrom; or (c) Subcontractor's failure to fulfill its obligations under this Subcontract Agreement; and (2) any such Claims or Damages are caused, or alleged to be caused, in whole or in part, by Subcontractor's breach of any obligation under this Subcontract Agreement or the Contract Documents, or by any wrongful or negligent act or omission of Subcontractor or anyone directly or indirectly employed by Subcontractor or anyone for whose acts Subcontractor may be liable; provided however that this provision shall only require the Subcontractor to indemnify the Contractor for Claims and Damages to the extent that such Claims and damages result from the Subcontractor's negligence, fault or responsibility.

(*Id.* § 16.1.)   Rand further alleges that its subsequent subcontracts with Aegis explicitly incorporated the MSA by including provisions that:

3. The Contractor and the Subcontractor acknowledge and agree that the Master Subcontract Agreement identified in the list of the Contract documents above shall be applicable to, and shall govern, all work performed by the Subcontractor on the Project and under this Agreement.  The Parties further expressly agree that the terms and conditions of such Master Subcontract Agreement are incorporated into this agreement as if fully set forth therein.

4. In the event that the term of the Master Subcontract Agreement expires prior to completion of the Project, the Parties agree that the Master Subcontract Agreement will remain in full force and effect until the Project is fully and finally completed.

(ECF No. 22 Ex. A ¶¶ 3, 4.)

Based in part on this contractual language, Rand allegedly filed various cross-claims and third-party claims in the underlying state court actions.  (ECF No. 22 ¶¶ 22–24.)

Specifically, Rand filed cross-claims alleging liability for the explosion against BG&E.  (*Id.* ¶ 22.)  Rand also filed third-party and cross-claims against Aegis and P&K, alleging contractual liability and indemnity, duty to defend, and common law indemnity, among other claims.  (*Id.* ¶ 23.)  Rand alleges that BG&E similarly filed various cross-claims against Aegis and P&K in the underlying state court actions.  (*Id.* ¶ 24.)  According to Rand, the state court actions arise from Aegis' scope of work pursuant to the Master T&C, MSA, and subsequent subcontracts.  (*Id.* ¶ 31.)  Rand alleges that these state court actions will determine liability and damages as to the personal injury claims among the defendants in the state court actions.  (*Id.* ¶ 32.)

On or about May 2, 2023, Rand formally tendered to Aegis a demand for indemnification and defense in the state court actions.  (*Id.* ¶ 33, Ex. B.)  Rand repeated its demand in August, September, and October 2023, but alleges that Aegis refused or failed to provide indemnification and defense.  (*Id.* ¶¶ 34–35.)  Rand alleges that Aegis' failure to indemnify and defend it constitutes a breach of contract.  (*Id.* ¶ 36.)  Specifically, Rand alleges that Aegis has breached the MSA and subsequent subcontracts by (1) failing to indemnify and defend Rand and the Owner (*i.e.*, "Exelon as agent for BG&E") in the state court actions and (2) failing to indemnify and defend Rand for any obligations Rand may owe to Original Plaintiffs regarding damages related to the work defined in the MSA and subsequent subcontracts.  (*Id.* ¶ 38.)  Based on this alleged contractual breach, Rand's one-count Third-Party Complaint seeks a declaratory judgment that "Aegis must indemnify Rand for all contractually required past, current, and future losses, claims, and demands concerning Aegis' work on the Project, including the claims in the State Court Actions and the instant declaratory

relief actions, including reasonable attorney's fees and costs, and for such other and further relief as the Court may deem just." (*Id.* at 10.)

On August 22, 2024, Aegis filed a Motion to Dismiss for Lack of Jurisdiction and Motion to Strike (ECF No. 34) Rand's Third-Party Complaint. (ECF No. 34.) Rand responded in Opposition (ECF No. 36) and Aegis replied (ECF No. 39).[7] As described above, the Court held a hearing before granting Original Plaintiffs' Motion for Judgment on the Pleadings (ECF No. 21). (ECF Nos. 55, 56.) By agreement of all parties, Aegis was not present at the hearing, which did not implicate or discuss the allegations in the Third-Party Complaint. *See* (ECF No. 44.) Following the Court's grant of Original Plaintiffs' Motion for Judgment on the Pleadings, Aegis and Rand filed position papers addressing the existence of diversity jurisdiction over the Third-Party claim for declaratory relief. (ECF No. 57 (Rand Position Paper); ECF No. 58 (Aegis Position Paper).) This matter is now ripe for review.

## STANDARD OF REVIEW

### I.    Rule 14 Impleader

Rule 14(a) of the Federal Rules of Civil Procedure governs the process by which a defendant may assert claims against parties not yet joined to an action:

> A defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it. But the third-party plaintiff must, by motion, obtain the court's leave if it files the third-party complaint more than 14 days after serving its original answer.

FED. R. CIV. P. 14(a)(1). When a third-party claim has been improperly brought, "[a]ny party may move to strike the third party claim, to sever it, or to try it separately." FED. R. CIV. P.

---

[7] Original Plaintiffs also filed a response to Rand's response to Aegis' Motion. (ECF No. 38.) Because Original Plaintiffs are no longer in active litigation in this action, the Court does not review their filing.

14(a)(2)(C).  In assessing third-party claims, the district court is afforded wide discretion.  *See L'Occitane, Inc. v. Tran Source Logistics, Inc.*, Civ. No. WMN-09-2499, 2010 WL 761201, at *5 (D. Md. Mar. 2, 2010); *see also Johnson v. M.I. Windows and Doors, Inc.*, 2012 WL 1015798, at *2 (D.S.C. Mar. 23, 2012).

## II.    Subject Matter Jurisdiction

A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure challenges a court's authority to hear the matter brought by a complaint.  *See Davis v. Thompson*, 367 F. Supp. 2d 792, 799 (D. Md. 2005).  A challenge to jurisdiction under Rule 12(b)(1) may proceed either as a facial challenge, asserting that the allegations in the complaint are insufficient to establish subject matter jurisdiction, or a factual challenge, asserting "that the jurisdictional allegations of the complaint [are] not true."  *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (quoting *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)).  In assessing a factual challenge to jurisdiction, the district court "is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment."  *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768–69 (4th Cir. 1991).  In assessing a facial challenge, "the district court assesses jurisdiction under the same standard as one brought under Rule 12(b)(6)."  *Evans v. United States*, 105 F.4th 606, 615 (4th Cir. 2024).  That is, "the district court accepts all allegations as true and determines whether those allegations are sufficient to invoke jurisdiction."  *Id.*  The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence.  *Demetres v. E. W. Constr., Inc.*,

776 F.3d 271, 272 (4th Cir. 2015); *Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999).  In this case, Aegis raises a facial challenge to jurisdiction.[8]

## ANALYSIS

In its Motion (ECF No. 34), Aegis argues that this Court lacks jurisdiction over Rand's third-party claim for declaratory relief because (1) the Third-Party Complaint does not meet the requirements of supplemental jurisdiction;  (2) the Court should decline to exercise any supplemental or declaratory relief jurisdiction that does exist; and (3) Rand's claim for declaratory relief is not ripe.  (ECF No. 34-1 at 8–14.)  Additionally,  Aegis argues that Rand's Third-Party Complaint should be stricken because Rand has not sufficiently shown that Aegis' alleged liability is derivative of Rand's liability to Original Plaintiffs.  (*Id.* at 14–17.)   In Opposition, Rand argues that supplemental jurisdiction exists and is proper because the third-party claim for declaratory relief relates to the same explosion and underlying state court actions.  (ECF No. 36 at 4–8.)  Additionally, Rand argues that the Court's rulings regarding the ripeness of its third-party claim must mirror any rulings as to Original Plaintiffs' claim for declaratory relief.  (*Id.* at 11.)   The Court addresses the issues of Rule 14 impleader and jurisdiction in turn.

### I.     Rule 14 Impleader

Federal Rule of Civil Procedure 14(a), permits a defendant to act as a third-party plaintiff by impleading a "nonparty who is or may be liable to it for all or part of the claim against it."  FED. R. CIV. P. 14(a)(1).  As Judge Nickerson of this Court explained, "[i]t is settled

---

[8]  Aegis also denies the allegations in Rand's Third-Party Complaint.  (ECF No. 34 at 5.)  The core of Aegis' argument, however, attacks the sufficiency of the allegations to establish jurisdiction, not the truth of the allegations.  (*Id.* at 7–14).

beyond dispute that a third party claim can be maintained only if the liability it asserts is in some way derivative of the main claim." *L'Occitane, Inc. v. Tran Source Logistics, Inc.*, Civ. No. WMN-09-2499, 2010 WL 761201, at *3 (D. Md. Mar. 2, 2010) (quoting *Watergate Landmark Condo. Unit Owners' Ass'n. v. Wiss, Janey, Elstner Assocs., Inc.*, 117 F.R.D. 576, 578 (E.D. Va. 1987)); *see also Amspacher v. Bldg. Systs. Transpo. Co.*, Civ. No. SAG-17-324, 2018 WL 1014923, at * 2 (D. Md. Feb. 22, 2018) (collecting cases). As this Court has previously noted, such derivative liability usually arises in cases involving indemnification, joint tortfeasors, or contribution. *AIG Eur. Ltd. v. Gen. Syst., Inc.*, Civ No. RDB-13-0216, 2014 WL 3671566, at *6 (D. Md. July 22, 2014); *see also L'Occitane*, 2010 WL 761201, at *3 (quoting *Watergate*, 117 F.R.D. at 578).

Where a defendant merely attempts to deflect blame onto another party, however, impleader is not permissible. *Crowley v. BWW L. Grp., LLC*, Civ. No. RDB-15-0607, 2016 WL 4611275, at *5 (D. Md. Sept. 6, 2016) (quoting *Watergate*, 117 F.R.D. at 578). That is, "[t]he third-party defendant 'may not be impleaded merely because he may be liable to the plaintiff' and it is not enough 'that the third-party claim is a related claim.'" *Guardian Life Ins. Co. of Am. V. Reinaman*, Civ. No. WDQ-10-1374, 2011 WL 2133703, at *3 (D. Md. May 26, 2011) (quoting *E.I. DuPont de Nemours & Co. v. Kolon Indus., Inc.*, 688 F. Supp. 2d 443, 462 (E.D. Va. 2009)). Courts enjoy wide discretion to assess third-party claims and may consider the introduction of unrelated issues or the undue complication of the original suit. *Crowley*, 2016 WL 4611275, at *5. As Judge Gallagher of this Court has explained, this discretion reflects that "[t]hird party procedure seeks to 'prevent circuity of action by drawing into one proceeding all parties who may ultimately become liable . . . .'" *Amspacher*, 2018 WL 1014923,

at *2 (quoting *Am. Exp. Lines v. Revel*, 262 F.2d 122, 124 (4th Cir. 1958)). Thus, third-party practice enables parties "to save the time and cost of duplicating evidence and to obtain consistent results from identical or similar evidence" while preventing delays between judgments among parties. *Am. Exp. Lines*, 262 F.2d at 125.

In this case, Rand's impleader of Aegis under Rule 14 was appropriate. Although this Court has recognized that actions raising contract and contribution claims stemming from "separate and independent contracts" may fail to meet the derivative liability requirement under Rule 14(a), Rand has sufficiently alleged that Aegis' alleged liability may be derivative of Rand's liability to Original Plaintiffs. *See AIG Eur. Ltd. v. Gen. Syst., Inc.*, Civ. No. RDB-13-0216, 2013 WL 6654382, at *3 (D. Md. Dec. 16, 2013) (quoting *E.I. DuPont de Nemours*, 688 F. Supp. 2d at 463–64). The Master T&C at issue in the original Complaint related to the same construction project as the subcontract agreements at issue in the Third-Party Complaint. Although Aegis was not a party to the Master T&C and Original Plaintiffs were not parties to the various subcontracting agreements between Aegis and Rand, the Master T&C contemplated the existence of subcontract agreements and explicitly referenced subcontractors in various provisions. (ECF No. 1 ¶ 17.) Similarly, the MSA and subsequent subcontracts referenced Rand's duties under the Master T&C. (ECF No. 1 Ex. 3 ¶¶ 16.1, 17.2.)

Even acknowledging that the Master T&C and MSA and subcontracts contain distinct terms—in their respective choice of law provisions, for example, they subject themselves to the laws of different states—Aegis' alleged liability to Rand is still derivative of the original Complaint. (ECF No. 32-2 at 9; ECF No. 1-3 at 20.) The basic thrust of Rand's third-party

claim is that Aegis must defend and indemnify it for damages related to the explosion that gave rise to Original Plaintiffs' claims against Rand, including any damages, indemnification, or defense costs that Rand owes Original Plaintiffs. Rand's obligations to Original Plaintiffs are governed in part by the Master T&C, and the indemnification provision in the MSA references the "Contractor's contract with Owner," which is the Master T&C. (ECF No. 1 Ex. 3 ¶ 16.1.) Thus, although Rand's third-party claim seeks indemnification beyond the scope of Rand's liability to Original Plaintiffs, the third-party claim is still "in some way derivative of the main claim." *L'Occitane*, 2010 WL 761201, at *3 (quoting *Watergate*, 117 F.R.D. at 578); *see also AIG Eur. Ltd.*, 2013 WL 6654382, at *2 (quoting *L'Occitane*, 2010 WL 761201, at *3) (recognizing indemnification is frequently an appropriate basis for third-party claims). Moreover, impleader in this case serves the efficiency policies underlying third-party practice by avoiding protracted litigation related the parties' duties under various contracts related to the same underlying state court actions. The Court denies Aegis' Motion to the extent that it seeks to strike Rand's Third-Party Complaint, which was proper under Rule 14.

## II.    Jurisdiction

Rand's Third-Party Complaint, which invokes this Court's supplemental jurisdiction and its jurisdiction under the Declaratory Judgment Act of 1934, 28 U.S.C. § 2201, presents multiple jurisdictional issues. The Court addresses each in turn.

### A. Federal Jurisdiction

As an initial matter, the parties dispute the existence of supplemental jurisdiction over the third-party claim. (ECF No. 34 at 8; ECF No. 36 at 4–5.) Supplemental jurisdiction is discretionary, and a court may decline to exercise supplemental jurisdiction where it has

dismissed the claims over which it has original jurisdiction.  28 U.S.C. § 1367(c); *see also Mays & Assocs., Inc. v. Euler*, 370 F. Supp. 2d 362, 372 (D. Md. 2005) (collecting cases).  Federal courts have original jurisdiction under 28 U.S.C. § 1332 where the plaintiff and defendant are of diverse citizenship and the amount in controversy is more than $75,000.  Where a federal court has original jurisdiction, it is required to exercise that jurisdiction.  *See Ministry of Def. of State of Kuwait v. Naffa*, 105 F.4th 154, 160 (4th Cir. 2024) (explaining in diversity case that "a district court must exercise jurisdiction unless 'the legal impossibility of recovery' virtually negates the plaintiff's good faith in asserting the claim" (quoting *JTH Tax Inc. v. Frashier*, 624 F.3d 635, 638 (4th Cir. 2010)).  In this case, the Court need not reach the parties' supplemental jurisdiction arguments because, despite Rand's failure to allege a clear amount in controversy in its Third-Party Complaint, the Court has diversity jurisdiction over the Third-Party claim.

As explained above, in evaluating a facial challenge under Rule 12(b)(1), a "district court accepts all allegations as true and determines whether those allegations are sufficient to invoke jurisdiction."  *Evans*, 105 F.4th at 615.  Diversity jurisdiction exists where the plaintiff can show by a preponderance of the evidence that the plaintiff and defendant are of diverse citizenship and the amount in controversy is more than $75,000.  *See Demetres*, 776 F.3d at 272.  Rand's Third-Party Complaint, which explicitly incorporates by reference all exhibits to the original Complaint, clearly alleges diversity of citizenship between it as a citizen of Virginia and Aegis, a citizen of Maryland.[9]  (ECF No. 22 ¶¶ 8, 11, 12.)  In its Third-Party Complaint, however, Rand invokes solely supplemental jurisdiction and does not overtly allege any

---

[9] Original Plaintiffs are also citizens of Maryland, but they did not allege any claims against Aegis.  Accordingly, the common citizenship between Original Plaintiffs and Aegis as Third-Party Defendant did not affect diversity jurisdiction.  *See Hassett v. Modern Maid Packers, Inc.*, 23 F.R.D. 661, 663 (D. Md. 1959) (explaining that claim by plaintiff against non-diverse third-party defendant would be fatal to diversity).

amount in controversy. Thus, the existence of diversity jurisdiction over the third-party claim hinges on whether the amount in controversy—that is, the cost of the indemnification and defense obligations alleged—exceeds $75,000.

In this case, Rand has shown by a preponderance of the evidence that its third-party claim does involve more than $75,000 in controversy. "In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 346 (1977). Rand alleges in its Third-Party Complaint that Aegis must indemnify it for its liability to Original Plaintiffs, and Original Plaintiffs alleged in their Complaint that the amount in controversy, without interests and costs, exceeds $75,000. (ECF No. 1 ¶ 9; ECF No. 57 at 2.) Moreover, Rand alleges that under the MSA and subsequent subcontracts Aegis must indemnify and defend it in the underlying state court actions and the instant litigation. (ECF No. 22 at 10; ECF No. 57 at 2–3.) Rand's Third-Party Complaint incorporated by reference all exhibits to Original Plaintiffs' Complaint, and those exhibits include complaints in the underlying state court actions in which state-court plaintiffs allege more than $75,000 in damages against Rand. *See, e.g.*, (ECF No. 1 Ex. 2 at 24); (ECF No. 22 ¶ 8.) Thus, Rand has shown in its Third-Party Complaint and the documents incorporated therein that the value of the declaratory judgment would exceed $75,000. Accordingly, this Court has original jurisdiction pursuant to 28 U.S.C. § 1332.

### B. Jurisdiction Under Declaratory Judgment Act

The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading,

may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).  To establish an actual controversy, a plaintiff must show that the dispute is "real and substantial" and "definite and concrete, touching the legal relations of parties having adverse legal interests."  *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (citation omitted).  In this case, Aegis argues that this Court lacks jurisdiction under the Declaratory Judgment Act because Rand's Third-Party Complaint is not ripe.  (ECF No. 34 at 12.)  Specifically, Aegis contends that Rand seeks a declaratory judgment interpreting the indemnification provision in the parties' MSA and subcontract agreements, but the indemnification provision only applies "to the extent that such Claims and damages result from [Aegis'] negligence, fault, or responsibility."  (*Id.* at 13.)  In Opposition, Rand argues that this Court's rulings as to the ripeness and justiciability of the Third-Party Complaint must mirror its rulings regarding Rand's assertion of those same defenses against Original Plaintiffs' Complaint.[10]  (ECF No. 36 at 11.)  Rand contends that the same contractual analysis applies to both the original Complaint and the Third-Party Complaint because the determination of liability is a condition precedent to indemnification under the relevant contracts.  (*Id.*)

Although Rand argues that this Court's rulings on ripeness and justiciability of the Third-Party Complaint must parallel its rulings on those issues as to Original Plaintiffs' Complaint, the Third-Party Complaint involves a distinct contract with different contractual terms.  The indemnification provision in Rand's MSA with Aegis explicitly states that Rand

---

[10]  The Court's rulings regarding the original Complaint are contained in its Memorandum Opinion dated November 8, 2024 (ECF No. 55).

"shall only require [Aegis] to indemnify [Rand] for Claims and Damages to the extent that such Claims and damages result from [Aegis'] negligence, fault or responsibility." (ECF No. 34 Ex. 2 at 6.) This provision is distinct from the terms of the Master T&C between Original Plaintiffs and Rand, which required that Rand indemnify Original Plaintiffs for all losses related to the construction work "except to the extent it is finally adjudicated that any liability is caused by or resulting from the sole negligence of [an Exelon Party]." (ECF No. 55 at 3.) Thus, the Court conducts an independent analysis of whether the indemnification provision in the subcontract agreements between Rand and Aegis create a condition precedent that would render the Third-Party Complaint unripe such that the Court lacks jurisdiction.

Ripeness is a jurisdictional issue, and an action is ripe if (1) the issues are purely legal, and (2) the controversy is final, or not dependent on future uncertainties. *L-3 Comms. Corp. v. Serco, Inc.*, 673 F. App'x 284, 290 (4th Cir. 2016) (citing *Doe v. Va. Dep't of State Police*, 713 F.3d 745, 758 (4th Cir. 2013)). Ripeness prevents federal courts from exceeding their powers under Article III and "advising what the law would be upon a hypothetical state of facts." *Trustgard Ins. Co. v. Collins*, 942 F.3d 195, 200 (4th Cir. 2019) (quoting *MedImmune*, 549 U.S. at 126). The United States Court of Appeals for the Fourth Circuit has recognized that trial courts have broad discretion to issue declaratory judgments and must "have 'good reason' to 'decline to entertain a declaratory judgment action.'" *McNulty v. Casero*, 479 F. Supp. 3d 200, 209 (D. Md. 2020) (quoting *Cont'l Cas. Co. v. Fuscardo*, 35 F.3d 963, 965 (4th Cir. 1994)). In this case, determination of ripeness requires interpreting the relevant contractual provisions to determine the scope of the indemnification provision at issue.

17

Before attempting to interpret the subcontract agreements between Rand and Aegis, however, the Court must address two preliminary issues not briefed by either party: (1) the choice of law governing the MSA, and (2) the scope of the declaratory judgment Rand seeks. "As a federal court sitting in diversity, we must apply the choice of law rules of the forum state, *see Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941), in this case, Maryland." *Riesett v. W.B. Doner & Co.*, 293 F.3d 164, 173 n.5 (4th Cir. 2002). "When a contract contains a choice of law provision, Maryland courts apply § 187(2) of the *Restatement (Second) of Conflict of Laws* (1971) ("*Restatement*"), which states: 'The law of the state chosen by the parties to govern their contractual rights will be applied.'" *Howard Bank v. Compu-Link Corp.*, 472 F. Supp. 3d 267, 273 (D. Md. 2020). The MSA provides that it "is governed by and interpreted under the laws of the Commonwealth of Virginia without consideration to the location of the Project." (ECF No. 1 Ex. 3 at 19.) Neither party has contested this provision, and the Court construes the subcontract agreements pursuant to Virginia law.[11] *See Howard*, 472 F. Supp. 3d at 273.

The Court also clarifies that it construes Rand's request for declaratory relief to include a request regarding the alleged duty to defend and the duty to indemnify. In its Third-Party Complaint, Rand provides conflicting language about the declaratory relief it seeks. Rand's Prayer for Relief seeks a declaratory judgment addressing only indemnification. *See* (ECF No.

---

[11] Rand alleges that it has raised contract claims against Aegis in the underlying state court actions. The Court has no way of knowing how the Maryland court will construe the choice of law governing the contracts between Rand and Aegis, but there does not appear to be a significant distinction between how an indemnification provision is interpreted under the laws of either state. Both Maryland and Virginia construe the language of an indemnification provision in accordance with the ordinary, accepted meaning of the language. *Compare Bd. of Trs., Cmty. Coll. Balt. Cnty. v. Patient First Corp.*, 120 A.3d 124, 132 (Md. 2015) ("As with any contract clause, a court construes language of an indemnification provision in accordance with its customary, ordinary, and accepted meaning.") *and Kraft Foods N. Am., Inc. v. Banner Eng'g Sales, Inc.*, 446 F. Supp. 2d 551, 577 (E.D. Va. 2006) ("Virginia courts adhere to the 'plain meaning' rule of interpreting contracts, whereby the clear and explicit language in a contract is to be taken in its ordinary significance . . . ." (quoting *IMWA Equities IX Co. v. WBC Assocs.*, 961 F.2d 780, 484 (4th Cir. 1992)).

22 at 10 ("WHEREFORE, Defendant rand*, respectfully requests that the Court enter judgment in favor of rand* and against Third Party Defendant Aegis and enter a declaratory judgment that Aegis must indemnify rand* for all contractually required past, current, and future losses, claims, and demands concerning Aegis' work on the Project, including the claims in the State Court Actions and the instant declaratory relief actions, including reasonable attorney's fees and costs, and for such other and further relief as this Court may deem just.").) Rand's substantive Third-Party Complaint, however, requests declaratory relief "that Aegis owes rand* indemnity and defense for all claims, damages, fines, losses and expenses, including but not limited to attorney's fees, arising out of or resulting from the Aegis' work . . . ." (*Id.* ¶ 44.) The parties' briefing does not address this issue and focuses almost entirely on the alleged duty to indemnify, with minimal reference to any duty to defend.[12] Despite the inconsistent language surrounding the parties' discussion of the declaratory relief at issue, "Federal Rule 54(c) requires the Court to grant 'whatever relief is appropriate' based on the facts proven." *Fisher v. Dackman*, Civ. No. JKB-24-1135, 2024 WL 3427074, at *4 (D. Md. July 15, 2024) (citing *Pitrolo v. Cnty. of Buncombe*, 589 F. App'x 619, 626 (4th Cir. 2014) (per curiam)). Accordingly, the Court construes Rand's third-party claim to seek a declaratory judgment that Aegis must indemnify *and* defend it. Indemnity and defense present different contractual duties under Virginia law, *Progressive Am. Ins. Co. v. Jireh House, Inc.*, 608 F. Supp. 3d 369, 376 (E.D. Va. 2022), and the Court addresses each duty in turn.

---

[12] Under Virginia law, a party may be obligated to defend even where it owes no duty to indemnify. *Progressive Am. Ins. Co. v. Jireh House, Inc.*, 608 F. Supp. 3d 369, 376 (E.D. Va. 2022). Accordingly, the parties' arguments as to the duty to indemnify cannot fully address any duty to defend.

### A. Duty to Indemnify

Under Virginia law, courts construe indemnity clauses under "general rules of contract construction." *Wellmore Coal Corp. v. Patrick Petroleum Corp.*, 808 F. Supp. 529, 533 (W.D. Va. 1992). "Virginia courts adhere to the 'plain meaning' rule of interpreting contracts, whereby clear and explicit language in a contract is to be taken in its ordinary signification, and, if the meaning is plain when so read, the instrument must be given effect accordingly." *Kraft Foods N. Am., Inc. v. Banner Eng'g Sales, Inc.*, 446 F. Supp. 2d 551, 577 (E.D. Va. 2006) (quoting *IMWA Equities IX Co. v. WBC Assocs.*, 961 F.2d 780, 484 (4th Cir. 1992)). In Virginia, "[u]nlike the duty to defend, which 'is based on the allegations in the underlying complaint, the duty to indemnify relies on litigated facts.'" *Nautilus Ins. Co. v. Strongwell Corp.*, 968 F. Supp. 2d 807, 820 (W.D. Va. 2013) (quoting *CACI Int'l, Inc. v. St. Paul Fire & Marine Ins. Co.*, 566 F.3d 150, 155 (4th Cir. 2009)). Virginia "courts have generally held that it would be 'premature' to rule on the plaintiff's duty to indemnify while the underlying action remains pending." *Id.* at 822 (first quoting *CACI Int'l, Inc.*, 566 F. 3d at 155; and then quoting *Penn-Am. Ins. Co. v. Mapp*, 461 F. Supp. 442, 458 (E.D. Va. 2006); *see also First Tenn. Bank Nat'l Assoc. v. St. Paul Fire & Marine Ins. Co.*, 501 F. App'x 255, 261 (4th Cir. 2012) (holding district court's ruling on applicability of contractual indemnification provision "was premature" "[b]ecause the allegations of the complaint do not establish the applicability of the [contractual] Exclusion as a matter of law").

In this case, the plain language of the indemnification clause establishes that Rand's Third-Party claim for declaratory relief is not ripe. By its plain meaning, the indemnification clause in the MSA requires indemnification only where Aegis is negligent, at fault, or responsible. Specifically, the indemnification provision concludes by explicitly stating,

"provided however that this provision shall only require the Subcontractor to indemnify the Contractor for Claims and Damages to the extent that such Claims and damages result from the Subcontractor's negligence, fault or responsibility." (ECF No. 34-1, Ex. 2 ¶ 28.)   Rand alleges in its Third-Party Complaint that "[t]he State Court Actions are in active litigation and will determine liability and damages, if any, against and among the named defendants for the personal injury claims related to the [explosion] Incident." (ECF No. 22 ¶ 31.)  Because the applicability of Aegis' alleged duty to indemnify depends on the outcome of the underlying state court actions, which Rand overtly acknowledges will determine liability among the named defendants, this controversy is dependent on future uncertainties such that it cannot be ripe. *L-3 Comms. Corp. v. Serco, Inc.*, 673 F. App'x 284, 290 (4th Cir. 2016) (citing *Doe v. Va. Dep't of State Police*, 713 F.3d 745, 758 (4th Cir. 2013)).  That is, the applicability of the indemnification duty depends on the legal determination of Aegis' negligence, fault, or responsibility, and that determination will be made by state courts in the underlying actions.   Accordingly, this issue is unripe and this Court lacks jurisdiction to issue any declaratory judgment regarding indemnification.[13]

### B. Duty to Defend

As explained above, an action for declaratory relief is ripe where (1) the issues are purely legal, and (2) the controversy is final and not dependent on future uncertainties.  *L-3 Comms. Corp.*, 673 F. App'x at 290.  Interpretation of a contractual duty to defend is a legal issue.  *See Nationwide Mut. Ins. Co.*, 785 F. Supp. 2d at 515, 534 (reaching duty to defend as a "solely legal

---

[13]  As explained above, this conclusion differs from the Court's conclusion regarding Original Plaintiffs' Complaint for declaratory relief because the original Complaint and Third-Party Complaint raise indemnification and defense obligations that stem from separate and independent contracts.

issue[]"). Unlike the issue of indemnification, the existence of a contractual duty of defense is based solely on the allegations of the underlying complaint such that is does not depend on any future outcome of litigation. *See Nautilus Ins. Co.*, 968 F. Supp. 2d at 820. Therefore, Virginia courts evaluate the existence of a duty to defend by comparing the four corners of the relevant contract to the four corners of the complaint. *State Farm Cas. Co. v. Shifflett*, 674 F. Supp. 3d 316, 321 (W.D. Va. 2023). As a result, "the district court need not make independent findings as to what actually occurred . . . . but rather need only decide whether the complaint's allegations, if proved, would bring the factual scenario within the scope of the exclusion." *Id.* (quoting *Penn-Am Ins. Co. v. Coffey*, 368 F.3d 409, 413 (4th Cir. 2004). In this case, the parties have provided the MSA and subcontract agreements, so the purely legal issue of the existence of any duty to defend is final. Accordingly, this action is ripe as to the issue of the existence of any duty to defend. Although the action is ripe such that this Court has jurisdiction regarding any duty to defend, good reasons exists to decline to exercise discretionary jurisdiction under the Declaratory Judgment Act.

"It has long been settled that a federal court has a measure of discretion to decline to entertain a declaratory judgment action that is otherwise properly within its jurisdiction." *LWRC Intern., LLC v. Mindlab Media, LLC*, 838 F. Supp. 2d 330, 337 (D. Md. 2011) (citing *Pub. Affairs Assoc., Inc. v. Rickover*, 369 U.S. 111, 112 (1962)); *Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 494 (1942)). While the discretion is not absolute, a court may decline to exercise jurisdiction "for 'good reason.'" *LWRC Intern.*, 838 F. Supp. at 337 (quoting *Aetna Cas. & Sur. Co. v. Quarles*, 92 F.3d 321, 324 (4th Cir. 1937)). In this case, Rand and Aegis both acknowledge that Rand has "filed various third-party claims and cross-claims against Aegis and P&K in the

State Court Actions, alleging, *inter alia*, contractual liability and indemnity and **a duty to defend** as well as common law indemnity." (ECF No. 22 ¶ 23 (emphasis added); (ECF No. 34-1 at 11).) The existence in the ongoing state litigation undergirding this action for declaratory relief of pending claims regarding Aegis' contractual duty to defend, which forms the subject of the declaratory judgment Rand seeks here, strongly weighs against this Court's exercise of jurisdiction. The substantially similar contractual duty to defend claims between Rand and Aegis in the underlying state court actions constitute parallel proceedings.[14]  *See Brillhart*, 316 U.S. at 494 (explaining standard for declaratory relief in action with parallel state proceeding); (ECF No. 22 ¶ 23 ("rand* filed various third-party claims and cross-claims against Aegis and P&K in the State Court Actions, alleging, *inter alia*, contractual liability and indemnity and a duty to defend as well as common law indemnity.").

"To determine whether to proceed with a federal declaratory judgment action when a parallel state action is pending," the Fourth Circuit has applied a four-factor analysis:

> (1) whether the state has a strong interest in having the issues decided in its courts; (2) whether the state courts could resolve the issues more efficiently than the federal courts; (3) whether the presence of 'overlapping issues of fact or law' might create unnecessary 'entanglement' between the state and federal courts; and (4) whether the federal action is mere 'procedural fencing,' in the sense that the action is merely the product of forum-shopping.

---

[14] The underlying state court actions constitute parallel proceedings only because Rand, as it alleges in its Third-Party Complaint, has alleged contractual duty to defend and duty to indemnify claims in those state court actions. As such, the state court actions must decide identical issues to those in front of this Court in this action for declaratory relief. To the extent that Rand argues the Court's decisions in this third-party declaratory action should mirror its decisions in the Original Plaintiffs' declaratory action against Rand, the Court emphasizes that, as explained in this Court's previous Memorandum Opinion, Original Plaintiffs did not file contractual claims regarding Rand's duty to indemnify and defend them in the underlying state court actions. As such, those underlying actions did not parallel Original Plaintiffs' claim for declaratory relief. *See* (ECF No. 55 at 8–9.)

*Coffey*, 368 F.3d at 412 (quoting *United Capitol Ins. Co. v. Kapiloff*, 155 F.3d 488, 493–94 (4th Cir. 1998)).   On balance, these factors disfavor exercising jurisdiction to issue a declaratory judgment regarding the duty to defend in this case.

The first two factors slightly favor the exercise of jurisdiction.  Maryland does not have a particularly strong interest in deciding the scope of a private contract.  *See Kapiloff*, 155 F.3d at 494; *Med. Mut. Ins. Co. of N. Carolina v. Littaua*, 35 F.4th at 209.   Moreover, as discussed above, the MSA in this case appears by its terms to be subject to Virginia law, which would further decrease Maryland's interest in deciding the scope of the contract.  As to the second factor, this Court could likely more efficiently decide the issues than the state courts because of the numerous underlying state court actions, parties, and overlapping claims and cross-claims alleged in those actions.   Despite these factors favoring exercise of jurisdiction, however, the last two factors strongly disfavor the exercise of jurisdiction.

The third factor strongly counsels against this Court's exercise of jurisdiction to issue a declaratory judgment regarding a duty to defend that apparently mirrors the contractual claims for duty to defend that Rand has alleged against Aegis in the underlying state court actions.  Based on Rand's allegation that it alleged "contractual liability and indemnity and a duty to defend" against Aegis in the state court-actions, this action for declaratory relief is duplicative of Rand's existing third-party or cross-claims against Aegis in underlying state actions.  (ECF No. 22 ¶ 23.)  The duplicative nature of the claim for declaratory relief and the claims in the underlying state court actions would create unnecessary entanglement between this Court and the Circuit Court for Baltimore City.  *See Wilton v. Seven Falls Co.*, 515 U.S. 277, 290 (1995) (holding district court acted within its discretion to stay action for declaratory relief

"where parallel proceedings, presenting opportunity for ventilation of the same state law issues, were underway in state court"). Where the "overlap with the state-court proceeding is significant" because the suits involve the same issues—here, the scope of the contractual duty to defend in light of the claims in the state court actions—the Fourth Circuit has suggested that it is appropriate for a district court to abstain from exercising jurisdiction in an action for declaratory relief. *Trustgard*, 942 F.3d at 203. For this reason, the third factor weighs against exercise of jurisdiction over this action for declaratory relief because Rand has elected to raise extremely similar claims in the state court actions.

Finally, the fourth factor, which assesses forum shopping and "procedural fencing," also disfavors the exercise of jurisdiction. "Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." *Gannett Co. v. Clark Constr. Grp., Inc.*, 286 F.3d 737, 744 (4th Cir. 2002) (quoting *Am. Int'l Underwriters, Inc. v. Cont'l Ins. Co.*, 843 F.2d 1253, 1258 (9th Cir. 1988)). "In many declaratory actions brought to resolve a duty to defend or indemnify a [party] in a controversy already the subject of state court litigation, there will be overlapping issues of fact or law between the state and federal actions." *Mitcheson v. Harris*, 955 F.2d 235, 239 (4th Cir. 1992). As the Fourth Circuit has recognized, "[p]reclusion following an imprudent federal decision might 'frustrate the orderly progress of the state-court proceedings by leaving the state court with some parts of the case foreclosed from further examination but still other parts in need of full scale resolution.'" *Trustgard*, 942 F.3d at 202 (quoting *Nautilus Ins. Co. v. Winchester Homes, Inc.*, 15 F.3d 371, 376 (4th Cir. 1994) *abrogated in part on other grounds by Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995)). Effectively, a declaratory judgment regarding the duty to defend in this case could

leave the underlying state court actions "with some parts of a case foreclosed from further examination but still other parts in need of full scale resolution." *Mitcheson*, 955 F.2d at 239. Moreover, the state courts in this case have significantly greater access to the relevant information regarding the scope of the duty to defend and any potential defenses Aegis has raised to that alleged duty in the underlying state court actions.[15]

The parallel state proceedings present good reason for this Court to decline to exercise its jurisdiction under the Declaratory Judgment Act. *See McNulty v. Casero*, 479 F. Supp. 3d 200, 209 (D. Md. 2020) (quoting *Cont'l Cas. Co. v. Fuscardo*, 35 F.3d 963, 965 (4th Cir. 1994)). Defendant's Motion to Dismiss for Lack of Jurisdiction (ECF No. 34) is GRANTED.

## CONCLUSION

For the reasons stated above, Defendant's Motion to Dismiss for Lack of Jurisdiction and Motion to Strike (ECF No. 34) is GRANTED on its jurisdictional basis, and Rand's Third-Party Complaint for Declaratory Relief (ECF No. 22) is DISMISSED.

A separate Order follows.

/s/
_____
Richard D. Bennett
United States Senior District Judge

Dated: March 10th, 2025

---

[15] Neither Rand nor Aegis have provided copies of their pleadings in the underlying state court actions.